(5 App. Div. 342.)

## FENNESSY v. ROSS.

(Supreme Court, Appellate Division, First Department. May 22, 1896.)

CONTRACTS—PUBLIC POLICY—SALE OF CORPORATE STOCK.

    A contract for the sale of stocks in several corporations, which provides that the buyer shall have the management of the corporations for one year at a stated salary, have an equal representation in the board of directors with the seller, and, after the first year, shall be made vice president and general manager, is void as against public policy.

Appeal from special term, New York county.

Action by Andrew L. Fennessy against William F. Ross to recover damages for breach of contract. From a judgment sustaining a demurrer to the complaint, plaintiff appeals. Affirmed.

Argued before BARRETT, RUMSEY, WILLIAMS, PATTERSON, and INGRAHAM, JJ.

Julius M. Mayer, for appellant.
J. A. Barhite, for respondent.

PATTERSON, J. This is an appeal from a judgment sustaining a demurrer to and dismissing an amended complaint. The action is brought upon a contract in writing, by which the defendant agreed to purchase from the plaintiff certain shares of stock in three corporations named in the complaint. In addition to the amount of money to be paid for the shares, the plaintiff stipulated with the defendant, as part of the consideration, in substance, that the defendant should be made the manager and a principal officer in such corporation, and should receive for the first year a compensation of $1,500, payable monthly. It was the declared purpose and intention of the parties that, at the expiration of the period of one year, a new contract should be made, by which the purchaser should receive a greater salary than $1,500 a year, and should be made vice president and general manager of the three companies, and should have a one-half representation in the board of directors; and it was also further agreed that, if either of the parties desired to sell his holdings of stock in such three companies, they should be first offered to the other party at a price not to exceed $10,000 in cash. The complaint in the action as it was originally framed was demurred to, on the ground that it did not state facts sufficient to constitute a cause of action, and the specification of the demurrer, in substance, was that the contract was void, as against public policy, and that no action would lie upon it. The invalidity of the contract was alleged to be that it was, in effect, one by which a

stockholder, as a condition connected with the sale of shares of his stock, bound himself to a transaction of selling the offices, and the virtual control of the corporation to a third party, or, in other words, that he was trafficking for his private advantage in the sale of the management and conduct of the business of the corporations. That demurrer was overruled at the special term, but, on appeal to the general term, that decision was reversed; and it was held by the court (Fennessy v. Ross, 90 Hun, 300, 35 N. Y. Supp. 868), upon a construction of the contract, that, by its terms, the plaintiff was selling out representation in the three companies, and also offices and the management, for a consideration which he was placing in his own pocket, and that the contract was utterly void. That decision of the general term is the law of this particular case, and we must follow it, as being a binding adjudication of the effect of this contract between the parties to it. But it was said in the opinion of the court that it did not appear that the plaintiff in the action was the sole stockholder of the corporation, or that he owned a majority of the stock. This expression of the general term has been seized upon by the plaintiff as intimating that, if such fact had appeared, a different aspect might have been put upon the case, and therefore, an application was made to the court for leave to amend the complaint, which was granted; and, in the present amended complaint, allegations are made to the effect that the plaintiff was the owner of a majority of the stock of the three corporations, and that the defendant was believed by the plaintiff to be a capable man, qualified as an expert, by long experience, to manage the business of the corporations, and that the plaintiff also believed that it would be to his interest, as the largest stockholder, and to the interest of all the parties concerned in the welfare of the corporations, that the defendant's services should be secured for the companies. To this amended complaint a demurrer was interposed, being that now before the court. It was held at the special term that the demurrer was well taken, and from the judgment entered upon that decision the present appeal is taken.

The simple question is whether the new allegations of the amended complaint substantially change the effect to be given to the contract between the plaintiff and the defendant. We are unable to see that there is any real difference between the case as it stood upon the original complaint and as it now stands upon this amended complaint. It still remains that the plaintiff was bartering away the offices of the companies and a representation in their boards of directors. It was not only a contract by which the plaintiff, as part of the consideration for the money he was to receive for his shares, agreed to make the purchaser a general manager and the vice president of the corporations; but he also agreed to keep him there at a compensation of $1,500 for the first year, and at a larger compensation afterwards. He was not only contracting to turn over the general management to the defendant, but stipulating that he should have a fixed salary for one year, whether his services were worth it or not, and agreeing to so constitute the boards of directors of the

corporations that the defendant, through them, could fix his larger compensation at whatever rate he and the plaintiff might agree upon. It seems too plain for argument that this was a confederacy between the two parties to control the whole corporations in their private interest, irrespective of the rights of other shareholders; and that there were such other holders of a considerable number of shares appears by necessary inference, if not by the actual statement of the complaint. The contract was one clearly made for the private advantage of the plaintiff. It is very similar to that which appeared in the case of Guernsey v. Cook, 120 Mass. 501, where it was held that a contract by which a shareholder in a corporation, in consideration of the purchase of a part of his stock, at a price named, agreed to secure to the purchaser the office of treasurer of the corporation, with a fixed salary, and, in case of his removal, to repurchase the stock, was void as against public policy, and was a fraud on the other members of the corporation in the absence of evidence that the transaction was not for the private benefit of the shareholder, or that it was consented to by the other members of the corporation. In this case is the superadded fact that the plaintiff agreed to give to the purchaser of the stock an equal representation in the board of directors of the three companies, thereby insuring to him the ability to keep himself in office so long as he might wish; for, with that equal representation, he could successfully resist any effort to remove him, however incompetent he might be. But it is urged by the appellant that, inasmuch as he owned a majority of the stock of the three corporations, he was entitled to administer their affairs in his own interest. That is substantially what his claim amounts to. An authority for that is supposed to be found in the case of Barnes v. Brown, 80 N. Y. 527, the difference between which case and the one at bar is pointed out in the opinion of the general term on the argument of the appeal from the judgment on the first demurrer herein. It is true that the plaintiff, as the owner of a majority of the stock in the three corporations, would have power to shape their policy, and, by the possession of that power, to control their business; but that does not make him the owner of the corporations, so that he can farm out their offices, and appropriate their moneys, and give gratuities to his own contract employés, under the name and guise of salaries, or do other unlawful and arbitrary acts, to the possible, if not at once apparent, prejudice of other stockholders. The control which he acquires by reason of his ownership of a majority of the shares of the corporations is the control of the legitimate business policy of the corporations within lawful limits; and a contract by which he agrees that a part of his shares shall be used to put and keep in office a person who may or may not be qualified to discharge its duties is not a lawful exercise of power.

There is no substantial change in the cause of action by reason of the additional averments put in the amended complaint, and the judgment of the court below in sustaining the demurrer must be affirmed, with costs. All concur.