FUNKHOUSER v. CAPPS. (No. 8082.)†

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 30, 1915. Rehearing Denied March 6, 1915.)

1. CONTRACTS ⚎121 — CONTRACTS BETWEEN STOCKHOLDERS—VALIDITY.

A contract, binding plaintiff to pool his stock in a newspaper corporation with the stock of defendant and A. on condition that their stock will represent more than 50 per cent. of the outstanding stock, that plaintiff shall have the

editorial and business management of the paper jointly with another, and that in the event of a failure to agree on any material point plaintiff, defendant, and another will settle differences, and binding defendant to purchase the stock of plaintiff on his services becoming unsatisfactory or on his desiring to sell, is contrary to public policy under Vernon's Sayles' Ann. Civ. St. 1914, arts. 1154, 1159, requiring the directors to elect officers, and conferring on the directors the general management of the affairs of a corporation, because the purpose of the contract is to place the control and management of the corporation in three individuals and to give plaintiff a lucrative position with the corporation.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 504; Dec. Dig. ☞121.]

**2. CONTRACTS ☞137—CONTRACTS BETWEEN STOCKHOLDERS—PARTIAL INVALIDITY.**

The court, in considering the contract as a whole, cannot say that the primary purpose thereof was a contract for the sale and purchase of stock in the corporation, and the invalidity of the provisions for the pooling of the stock and the assumption of the management of the corporation renders invalid the stipulation for the sale and purchase of the stock.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 701–712; Dec. Dig. ☞137.]

**3. CONTRACTS ☞137—INVALIDITY IN PART—EFFECT.**

The rule that, where the lawful part of a contract can be separated from the balance, the unlawful part will be rejected and the lawful part enforced does not apply where the consideration entering into the valid part is tainted with the invalidity of the consideration on which the invalid parts are founded.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 701–712; Dec. Dig. ☞137.]

Buck, J., dissenting.

Appeal from District Court, Tarrant County; J. W. Swayne, Judge.

Action by W. J. Funkhouser against William Capps. From a judgment for defendant, plaintiff appeals. Affirmed.

Lattimore, Cummings, Doyle & Bouldin, of Ft. Worth, for appellant. Capps, Cantey, Hanger & Short, Wm. L. Evans, and David B. Trammell, all of Ft. Worth, for appellee.

CONNER, C. J. Appellant complains of a judgment against him upon the following contract:

"Ft. Worth, Texas. July 5, 1912.

"Mr. Wm. Capps, Ft. Worth, Texas—Dear Sir: In keeping with my conversation with you to-day, I beg to submit the following proposition:

"I agree to pool my stock in the Record Co. with that of yours and Mr. Armstrong under the following conditions:

"(1) I must be convinced that by including my stock there will be represented more than 50% of the outstanding stock of the Record Company.

"(2) In the event the control of the Record Company is secured in this way, Mr. McCaleb, or some one else to be determined upon in the editorial department and myself, shall jointly have the editorial and business management of the paper and in the event of our failure at any time to agree upon any material point pertaining to the editorial or business management of the paper; then you are to constitute a third party, and we three together will settle all such differences.

"(3) To guarantee my stock interest in the Record Company, you agree that if at any time my services should become unsatisfactory or I should desire to sever my connection with the company, to pay me upon demand, three times the par value for the twenty (20) shares of Record Co. stock which I now hold, and the amount paid by me, plus earned and unpaid dividends for any additional stock which I may have acquired.

"(4) In the event of a sale of the controlling interest in the Record Co. which includes our stock, I am to receive one-fifth (⅕) of the proceeds of such sale after deducting for the stock held by you, Mr. Armstrong and myself at the price of two dollars and fifty cents ($2.50) for each dollar of par value thus represented.

"The acceptance of this proposition by you acknowledges it as a contract as binding upon each of us as though written in strictly legal form and technically correct.

"Respectfully submitted, W. J. Funkhouser.

"Accepted: Wm. Capps."

Appellant sued for the enforcement of the terms of the third paragraph of the contract, alleging, in substance, that he had severed his connection as business manager of the Record Company (a corporation), and that the defendant, Capps, refused to accept and pay for the plaintiff's stock, as agreed upon in said paragraph of the contract. Appellee Capps defended on the ground that the contract was void as against public policy, and the court so rendered its judgment.

[1] We are of the opinion that the contract made the basis of the plaintiff's suit plainly manifests that one of its purposes was to place the control and management of the affairs of the Record Company in three individuals, to wit, W. H. Funkhouser, McCaleb (or some other person to be selected in his place), and the defendant, Capps. Another purpose as plainly manifested was to place the plaintiff, Funkhouser, into a lucrative position with the Record Company. We think neither of these purposes can be upheld. Article 1154, Vernon's Sayles' Tex. Civ. Stat., provides that:

"The directors or trustees shall choose one of their number president, and shall appoint a secretary and treasurer and such other officers as they may deem necessary for the corporation."

Article 1159 provides that:

"The directors or trustees shall have the general management of the affairs of the corporation," etc.

And any agreement having for its end a defeat of the control and management of a corporation as prescribed in the wisdom of the Legislature must be condemned. By the terms of the contract the appellant was not only to secure a position, but in such position he, together with Mr. McCaleb and Capps, were to secure and assume the absolute editorial and business management of a great newspaper, irrespective of the qualifications of either party for the office, or of the rights, opinions, or desires of any other stockholder or director. As if to place this intention beyond doubt, the closing sentence of the second paragraph provides that if there be a materi-

al difference at any time between the plaintiff and McCaleb, then the defendant was to constitute a third party and "we three together will settle all such differences." The Legislature as we have seen, has wisely seen fit to require the management of the affairs of a corporation to be submitted to directors or trustees selected by the stockholders, and the contract otherwise providing, cannot be approved. In the other respect the contract must be held invalid. As said in 2 Cook on Corporations (7th Ed.) § 622a, p. 1837:

"A contract in regard to elections in private corporations is not legal if it provides that a lucrative corporate position shall be given to one or more of the parties to the contract. Thus an agreement of a large stockholder holding a majority of the stock that, upon the purchase and absorption of plaintiff's business by the corporation, the plaintiff should be engaged for a term of years as vice president and general manager of the corporation at a specified salary is contrary to public policy and is void."

We deem it unnecessary to swell our opinion with a quotation of other authorities on this point. We think it sufficient to say that the rule stated in the quotation from Cook is well supported. See Withers v. Edmonds, 26 Tex. Civ. App. 189, 62 S. W. 795, which is very closely in point. See, also, Guernsey v. Cook, 120 Mass. 501; Gage v. Fisher, 5 N. D. 297, 65 N. W. 809, 31 L. R. A. 557; Scripps v. Sweeney, 160 Mich. 148, 125 N. W. 72, and authorities cited in these cases.

[2, 3] Appellant urges, however, that we should disregard the invalid parts of the contract to which we have referred, and establish the particular paragraph upon which he sues, to wit, paragraph 3, alleged to constitute the agreement for the purchase of appellant's stock. It is true that standing alone this paragraph might constitute a sufficient contract to support the action, and it is a rule of law that whenever the unlawful part of the contract can be separated from the rest, the unlawful part will be rejected and the remainder established. Haswell v. Blake, 90 S. W. 1125; St. L., I. M. So. Ry. Co. v. Matthews, 64 Ark. 398, 42 S. W. 902, 39 L. R. A. 467. We, however, do not feel prepared to hold that the paragraph of the contract declared upon is so separated from and independent of the other paragraphs of the contract as to authorize the adoption of the rule invoked. This rule can in no case be enforced where the consideration which enters into the valid portion is tainted with the invalidity of the consideration upon which the invalid parts of the contract are founded. In the language of Mr. Parsons (1 Parsons on Contracts, 457):

"If any part of a consideration is illegal, the whole consideration is void, because public policy will not permit a party to enforce a promise which he has obtained by an illegal act, or an illegal promise, although he may have connected with this act or promise one which is legal."

Again, as said in the case of Bishop v. Palmer, 146 Mass. 469, 16 N. E. 299, 4 Am. St. Rep. 339:

"The law visits a contract founded on such a consideration with a positive condemnation, which it makes effectual by refusing to support it in whole or in part where the consideration cannot be severed."

So in the case of Hazelton v. Sheckels, 202 U. S. 71, 26 Sup. Ct. 567, 50 L. Ed. 939, 6 Ann. Cas. 217, by the United States Supreme Court, it was said:

"Every part of the consideration goes equally to the whole promise, and therefore, if any part of it is contrary to public policy, the whole promise falls" (citing numerous cases).

In the case of Wegner Bros. v. Biering & Co., 65 Tex. 506, Mr. Justice Robertson, among other things, on the subject under consideration said:

"If a debtor, in payment of an account for $100, and in consideration that his creditor will refrain from a duty or do an illegal act, executes his note only for the amount of the account, the note is nevertheless void. The good consideration has no virtue to cure the bad, but the bad corrupts the whole."

Viewing the contract as a whole, it cannot be said that its primary purpose was a contract for the sale and purchase of stock in the corporation. For aught that appears on the face of the contract, the agreement of the defendant to purchase appellant's stock was influenced in a greater or less degree by appellant's agreement to assume position and control of the editorial and business management of the company. The least that can be said is that it is by no means clear that appellant's engagement to pool his stock and to assume control over the editorial and business management of the company was not the consideration, in part at least, for the defendant's promise to take appellant's stock. There is no means of determining how much of the defendant's obligation declared upon rests upon the illegal consideration. In such case the paragraphs may not be separated, but the contract as a whole must be condemned.

We conclude, therefore, that the contract sued upon is void altogether because of a violation of public policy. The judgment of the court below is accordingly in all things affirmed.

BUCK, J. (dissenting). I concur in the conclusion reached in the majority opinion that the provisions contained in the second paragraph of the contract are unenforceable, and that thereby the contract becomes void, as against public policy, if the terms of the contract are such that the consideration moving from appellee to appellant as contained in said second paragraph may not be rejected, and yet leave a contract with all the essentials to make it valid. As it seems to the writer, the only consideration moving from appellant to appellee was the promise of the former to pool his 20 shares of stock with the stock owned by Capps and Armstrong. In consideration of his doing this, appellant stipulated that appellee should do or promise to do certain things, to wit:

First. Capps must convince him that by such pooling of stock more than 50 per cent. of the entire outstanding of the company's stock would be represented.

Second. That he (Funkhouser) was to have with said company a position of emolument and authority.

Third. That in the event of the discontinuance of his services, Funkhouser was to receive from Capps three times the par value of the stock held by the former. .

Fourth. That in the event of the sale of the controlling interest in the Record Company, he was to receive one-fifth of the proceeds of such sale, after deducting the price of the stock held by appellee, Mr. Armstrong, and appellant.

If we eliminate the consideration moving to Funkhouser as set forth in the said second paragraph entirely, we still have left the full consideration moving to appellee, and a sufficient consideration moving to appellant. In Haswell v. Blake, supra, the Court of Civil Appeals, Fifth District of Texas, cites with approval the following language by the Supreme Court of Iowa in the case of Osgood v. Bauder, 75 Iowa, 550, 39 N. W. 887, 1 L. R. A. 655:

"If one of two considerations of a promise be void merely, the other will support the promise, but that if one of two considerations be unlawful, the promise is void."

It is not contended by appellee, nor is it held by the majority of this court, that the consideration set forth in said second paragraph is unlawful, but that at most it is merely void and nonenforceable. There is nothing in the contract that would justify the conclusion that any consideration inured to appellee by virtue of the stipulations contained in said second paragraph. The consideration is all moving to appellant, and he demands, as one of the prerequisites to his promise to do the one thing demanded of him, that appellee insure him this position clothed with the authority mentioned. That appellant could have waived entirely this requirement, without in any way affecting the consideration inuring to appellee, it is believed is apparent. There is nothing in the terms of the contract that justify, in my opinion, the conclusion that appellee attached any importance to appellant's taking the position with the Record Company, and the tenure of said position was left entirely discretionary with either party, while appellant did attach importance to said position, and especially as to the authority with which he would be endued while he so held it. But it is evident that the main consideration in favor of appellant, as stipulated by him, was the pecuniary advantage to be derived in the sale of his stock at a stated valuation, in the event of the discontinuance of his services with said company.

That the considerations mentioned in paragraph 2 and the one mentioned in paragraph 3 are separable, and distinct I believe to be without doubt. If so, the contract should stand, with the invalid consideration eliminated. Haswell v. Blake, supra; Railway Co. v. Matthews, 64 Ark. 398, 42 S. W. 902, 39 L. R. A. 467, and the cases there cited. In the last-named case the Supreme Court of Arkansas uses this language:

"But if we assume that this stipulation is void because it is contrary to public policy, it may be eliminated without affecting the remainder of the contract; for it is separate and distinct from, and independent of, the other promises of the railroad company, which are legal, and the whole contract is founded upon one lawful consideration, the services of appellee. If, therefore, it be illegal, it is void, and the remainder of the contract is valid; the rule in such cases being that 'where the consideration is tainted by no illegality, but some of the promises * * * are illegal, the illegality of those which are bad does not communicate itself to or contaminate those which are good, except where, in consequence of some peculiarity in the contract, its parts are inseparable or dependent upon one another.' But appellee is not seeking to enforce the article as to arbitration (the one held to be invalid). He has abandoned that and now asks for compensation for the damages occasioned by his discharge."

It is so in this case. Appellant has abandoned any claim based upon the second paragraph, and relies upon failure of specific performance on the part of the promise of appellee as contained in the third paragraph. It is the opinion of the writer that he is entitled to a trial upon this issue, and that the trial court erred in sustaining appellee's general demurrer to appellant's petition, and judgment of the trial court ought to be reversed and the cause remanded for a new trial.